**GUCOVSCHI ROZENSHTEYN, PLLC.**
Adrian Gucovschi (State Bar No. 360988)
140 Broadway, Fl. 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHARRAH THOMPSON, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>OBSERVE.AI, INC.,<br><br>Defendant. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

1    Plaintiff Sharrah Thompson ("Plaintiff") brings this action on behalf of herself and all others

2    similarly situated against Defendant Observe.ai, Inc. ("Defendant" or "Observe.AI").    Plaintiff

3    makes the following allegations pursuant to the investigation of her counsel and based upon

4    information and belief, except as to the allegations specifically pertaining to herself, which are based

5    on personal knowledge.

6    <u>**NATURE OF THE ACTION**</u>

7    1.    Observe.AI developed and operates a conversation intelligence software-as-a-service

8    ("SaaS") that it sells to, and partners with, third-party businesses (such as Public Storage) so that

9    those businesses can "[a]alyze 100% of customer interactions and transform this data into actionable

10    insights."[1]    To accomplish this, Defendant uses its proprietary artificial intelligence ("AI") model

11    trained on a dataset of hundreds of millions of customer interactions."[2]    The platform operates by

12    recording a caller's speech and then transcribing it using natural language processing ("NLP"),

13    allowing artificial intelligence ("AI") to read the text, identify patterns, and classify the data. The

14    result is that Public Storage consumers' telephone conversations are surreptitiously transmitted to

15    Observe.AI's servers, where it is processed and analyzed using Observe.AI's AI and NLP, and

16    thereafter presented to Observe.AI's clients in dashboards, searchable transcripts, and reports.

17    2.    Observe.AI's conversation intelligence SaaS includes several services ("Services"),

18    including, *inter alia*, Real-time AI and Post-interaction AI.    Third party businesses such as Public

19    Storage employ Defendant's Services.

20    3.    By employing the Services, Public Storage has aided, agreed with, employed, and/or

21    permitted Observe.AI to monitor, read, record, learn the contents of, or otherwise intercept the

22    conversations of their current and prospective consumers without their consent.    These consumers

23    include individuals who call Public Storage (*i.e.*, their customer service line) from within the State

24    of California to, among other things, retrieve information, reserve storage, make changes to their

25    contracts, and receive additional forms of customer support.

26

27    [1] https://www.observe.ai/platform/overview

28    [2] https://www.observe.ai/press-releases/contact-center-llm-generative-ai

4.      Unbeknownst to consumers, when they contact and speak with businesses such as Public Storage, Observe.AI eavesdrops and records these conversations to which it is not a party. By partnering with third party businesses and deploying its Services, Observe.AI collects a trove of data from telephone conversations between businesses (in this case, Public Storage) and their consumers.

5.      Observe.AI needs access to this data to provide the Services' features (including, *inter alia*, call recording, call transcription, and analysis thereof) described *infra*.  Thus, Observe.AI records, accesses, reads, and learns the contents of conversations between California residents, on the one hand, and businesses, including but not limited to Public Storage, on the other hand.

6.      Crucially, neither Public Storage nor Observe.AI procured the consent of any person who interacted with Public Storage prior to Observe.AI recording, accessing, reading, and learning the contents of conversations between Californian residents and Public Storage.

7.      For instance, Public Storage consumers are told: "please note that this call may be recorded for quality assurance and training purposes." However, there is no disclosure that consumers' calls will also be shared with Observe.AI, an unknown third party, for purposes unrelated to quality assurance and/or training. This lack of consent is particularly troublesome given that Observe.AI has the capability to use the contents of those conversations for purposes other than simply relaying the same to Public Storage.

8.      Plaintiff brings this action to prevent Defendant from further violating the privacy rights of California residents, and to recover statutory damages from Defendant for failing to comply with the California Invasion of Privacy Act ("CIPA") §§ 631 and 632.

## PARTIES

9.      Plaintiff Sharrah Thompson resides in Fresno, California, intends to remain there, and is, therefore, a citizen of California.  Ms. Thompson was in California when she called Public Storage within the last 12 months of the filing of this Complaint to discuss sensitive information regarding her use of Public Storage's services, including financial and personal information.  Ms. Thompson reasonably expected that her conversation with Public Storage was only between her and Public Storage.  Ms. Thompson was not aware, nor did she have any reason to suspect, that her phone call

was being surreptitiously transmitted to an unknown third party software analytics provider: Observe.AI.

10.     Nonetheless, Observe.AI, through the Services, eavesdropped on Ms. Thompson's entire conversation with Public Storage.  Specifically, Observe.AI, through the Services, recorded and transcribed Ms. Thompson's conversation in real time and performed AI analysis thereon. Through this process, Observe.AI read, learned, and used the contents of Ms. Thompson's conversation with Public Storage in real time.  Both Observe.AI and Public Storage failed to inform Ms. Thompson, prior to recording: (i) that a third party, Observe.AI, was listening in on her communications with Public Storage, (ii) that a third party, Observe.AI, was tapping or otherwise making an unauthorized connection with Ms. Thompson's telephone conversation using the Services, and (iii) that the contents of Ms. Thompson's confidential communications with Public Storage were being recorded, collected, intercepted, and analyzed by a third party, Observe.AI, using the Services.

11.     Nor did Ms. Thompson provide consent for the contents of her communications to be used for purposes other than Public Storage's internal training or quality assurance purposes, such as Observe.AI's marketing analytics, AI development, and industry reports, amongst other uses, as discussed *infra*. Therefore, Ms. Thompson did not consent to Observe.AI intercepting or recording her calls to Public Storage, nor did she consent to the contents of her communication to be used by Public Storage or Observe.AI for the full scope of the Services or Observe.AI's other uses of the call recordings.

12.     Plaintiff has, accordingly, had her privacy invaded due to Observe.AI's violations of CIPA alleged herein.

13.     Defendant Observe.AI, Inc. is a Delaware corporation with its principal place of business in Redwood City, California.

## JURISDICTION AND VENUE

14.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because this is a class action where there are more than 100 members and the aggregate

1    amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs, and at least one

2    member of the putative Class is a citizen of a state different from Defendant.

3        15.    The Court has personal jurisdiction over Defendant because Defendant is

4    headquartered in this District.

5        16.    Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial

6    portion of the events giving rise to this action occurred in this District.

7                                **FACTUAL ALLEGATIONS**

8    **I.    The California Invasion Of Privacy Act**

9        17.    The California Legislature enacted the Invasion of Privacy Act to protect certain

10    privacy rights of California citizens. The legislature expressly recognized that "the development of

11    new devices and techniques for the purpose of eavesdropping upon private communications … has

12    created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and

13    civilized society."  Cal. Penal Code § 630.

14        18.    The California Supreme Court has repeatedly stated an "express objective" of CIPA

15    is to "protect a person placing or receiving a call from a situation where the person on the other end

16    of the line *permits an outsider to tap her telephone or listen in on the call*." *Ribas v. Clark*, 38 Cal.

17    3d 355, 364 (1985) (emphasis added).

18        19.    Further, as the California Supreme Court has held in explaining the legislative

19    purpose behind CIPA:

20                    While one who imparts private information risks the betrayal of her
21                    confidence by the other party, a substantial distinction has been
                    recognized between the secondhand repetition of the contents of a
22                    conversation and its *simultaneous dissemination to an unannounced
                    second auditor, whether that auditor be a person or mechanical device.*
23
24                    As one commentator has noted, such secret monitoring denies the
                    speaker an important aspect of privacy of communication—the right to
25                    control the nature and extent of the firsthand dissemination of her
                    statements.
26
    *Ribas v. Clark*, 38 Cal. 3d 355, 360-61 (1985) (emphasis added; internal citations omitted).
27

28

20.     As part of CIPA, the California Legislature enacted § 631(a), which prohibits any person or entity from [i] "intentionally tap[ping], or mak[ing] any unauthorized connection … with any telegraph or telephone wire," [ii] "willfully and without the consent of all parties to the communication … read[ing], or attempt[ing] to read, or to learn the contents or meaning of any … communication while the same is in transit or passing over any wire, line, or cable, or is being sent from, or received at any place within [California]," or [iii] "us[ing], or attempt[ing] to use … any information so obtained."

21.     CIPA § 631(a) also penalizes [iv] those who "aid[], agree[] with, employ[], or conspire[] with any person" who conducts the aforementioned wiretapping, or those who "permit" the wiretapping.

22.     As part of the Invasion of Privacy Act, the California Legislature additionally introduced Penal Code § 632(a), which prohibits any person or entity from "intentionally and without the consent of all parties to a confidential communication, us[ing] an electronic amplifying or recording device to eavesdrop upon or record [a] confidential communication."

23.     Individuals may bring an action against the violator of CIPA §§ 631 and 632 for $5,000 per violation.  Cal. Penal Code § 637.2(a)(1).  Plaintiff does so here against Observe.AI.

## II.     Defendant Violates The California Invasion Of Privacy Act

24.     Observe.AI ranks amongst the leaders in AI conversation analytics.  To accomplish this, Defendant uses its proprietary AI model trained on " trained on 3 billion interactions – representing over 100 years of domain-specific data – to support an array of AI-based tasks for contact center teams.[3]  Observe.AI's conversation intelligence software-as-a-service ("SaaS") includes several services, including its Real-time AI and Post-interaction AI (the "Services").

25.     Observe.AI's  Real Time AI "captures and formats all call interactions, making the information instantly actionable[.]"[4] This enables supervisors to obtain a "a 360-degree view of all active conversations with AI-powered contextual details and help them identify challenging

---

[3] https://www.businesswire.com/news/home/20240509353814/en/Observe.AI-Named-a-Strong-Performer-in-Real-Time-Revenue-Execution-Platforms-by-Independent-Analyst-Firm

[4] https://www.observe.ai/real-time/summarization-ai

customer interactions that require assistance."[5] Real Time AI's software "can detect keywords or phrases indicating dissatisfaction, enabling agents to address issues promptly and prevent escalations."[6]

26.    Observe.AI Post Interaction AI allows companies to "[t]urn every evaluated interaction into insights and opportunities for improvement to advance business-critical operations[.]"[7] For instance, the Post Interaction AI can "detect moments where sentiment drops like long hold times or knowledge gaps and use that to improve scripts or train agents."[8] To accomplish this, Obverve.AI uses "voice analytics" which "evaluates the emotional tone of customer interactions" by analyzing "variations in tone and pitch" along with other "speech patterns such as speech rate, pauses, and interruptions."[9]

27.    Observe.AI agglomerates the data from these features into its "Conversational Intelligence" solution, which permits businesses to "isolate business-critical insights from all conversations based on [their] specific keywords, phrases, and criteria" and leverage the platform's "built-in machine learning intelligence capability to capture the sentiment of every spoken conversation."[10]

28.    When Observe.AI uses the Services on a phone conversation, it is not like a tape recorder or a "tool" used by one party to record the other.  Instead, Observe.AI—a separate and distinct third-party entity from the parties to the conversation—uses the Services to eavesdrop upon, record, extract data from, and analyze a conversation to which it is not a party.  This is because Observe.AI itself is collecting the content of any conversation.  That data is then analyzed by Observe.AI in the manner alleged above before being provided to any entity that was a party to the conversation (like Public Storage).

---

[5] https://www.observe.ai/real-time/agent-assist

[6] https://www.observe.ai/blog/voice-analytics

[7] https://www.observe.ai/post-interaction-ai

[8] https://www.observe.ai/insights

[9] *Supra*, footnote 6.

[10] https://www.observe.ai/platform/conversational-intelligence

29. Observe.AI has the capability to use the contents of conversations it collects through Services for its own purposes and purposes beyond simply furnishing recordings to its clients, such as Public Storage.

30. Indeed, Observe.AI proudly touts that its AI systems are "trained on billions of real interactions" and that it has analyzed "3 B+" interactions equating to "100+ Years of contact center training data."[11]

31. Observe.AI's documentation corroborates those claims. For instance, when a business engages Observe.AI to provide the Services, Observe.AI's standard contract unequivocally states that those businesses "acknowledge and agree" that Observe.AI may use the call content:

> "for the purposes of (a) providing the services, (b) testing, improving, and operating its products and services, (c) generating Aggregated Anonymous Data, and (d) freely retain and use Aggregated Anonymous Data for Observe.AI's business purposes (including without limitation, for purposes of improving, testing, and operating Observe.ai's products and services)."[12]

32. Similarly, Observe.AI's Responsible AI documentation states that it uses "anonymized and masked data for model training" and conducts "re-training to mitigate bias and maintain accuracy."[13]

33. Finally, Observe.AI's Privacy Policy states that:

> "When customers use our platform, we receive call recordings for transcribing and reporting purposes. Call recordings will contain personal details of the end customer (Customer's customer) and Agents."[14]

34. Given that Observe.AI receives this information, it at least has the capability of using the call data prior to any anonymization or masking taking place.

---

[11] *Id.*

[12] https://www.observe.ai/end-user-license-agreement#:~:text=Observe,ai%E2%80%99s%20products%20and%20services

[13] https://www.observe.ai/trust#:~:text=,masked%20data%20for%20model%20training

[14] https://www.observe.ai/privacy-policy

35.    Thus, Observe.AI has the capability to use the wiretapped data it collects through the Services to, *inter alia*, provide, run, personalize, improve, operate, maintain, and market its products and services, and to conduct performance reporting.

36.    Observe.AI knows that consumers of Public Storage are unaware that Observe.AI is monitoring, recording, and/or analyzing their conversations.   Nonetheless, Observe.AI violates consumers' privacy rights, without the requisite consent, in pursuit of profit.

## CLASS ALLEGATIONS

37.    Plaintiff seeks certification of the following class: all California residents who called Public Storage while in California and whose conversations were intercepted and recorded by Observe.AI (the "Class").

38.    Plaintiff reserves the right to modify the Class definition, including by using subclasses, as appropriate based on further investigation and discovery obtained in the case.

39.    The following people are excluded from the Class: (1) any Judge presiding over this action and members of her or her family; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents have a controlling interest (including current and former employees, officers, or directors); (3) persons who properly execute and file a timely request for exclusion from the Class; (4) persons whose claims in this matter have been finally adjudicated on the merits or otherwise released; (5) Plaintiff's counsel and Defendant's counsel; and (6) the legal representatives, successors, and assigns of any such excluded persons.

40.    **Numerosity:** The number of persons within the Class is substantial and believed to amount to thousands, if not millions of persons.  It is, therefore, impractical to join each member of the Class as a named Plaintiff.  Further, the size and relatively modest value of the claims of the individual members of the Class render joinder impractical.  Accordingly, utilization of the class action mechanism is the most economically feasible means of determining and adjudicating the merits of this litigation.  Moreover, the Class is ascertainable and identifiable from Defendant's records.

41.     **Commonality and Predominance:** There are well-defined common questions of fact and law that exist as to all members of the Class and that predominate over any questions affecting only individual members of the Class.  These common legal and factual questions, which do not vary between members of the Class, and which may be determined without reference to the individual circumstances of any Class member, include, but are not limited to, the following: whether Defendant violated CIPA §§ 631 and 632; whether Defendant sought or obtained prior consent—express or otherwise—from Plaintiff and the Class; and whether Plaintiff and members of the Class are entitled to damages, reasonable attorneys' fees, pre-judgment interest and costs of this suit.

42.     **Typicality:** The claims of the named Plaintiff are typical of the claims of the Class because the named Plaintiff, like all other members of the Class members, called Public Storage's telephone lines and had the content of their communications read, learned, analyzed, and/or examined by Observe.AI.

43.     **Adequate Representation:** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the Class members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and she intends to prosecute this action vigorously.  The interests of members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

44.     **Superiority:** The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of members of the Class.  Each individual member of the Class may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendant's

liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## CAUSES OF ACTION

### COUNT I
**Violation Of The California Invasion of Privacy Act,**
**Cal. Penal Code § 631(a)**

45.     Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

46.     CIPA § 631(a) imposes liability for "distinct and mutually independent patterns of conduct." *Tavernetti v. Superior Ct.*, 22 Cal. 3d 187, 192-93 (1978).

47.     To establish liability under CIPA § 631(a), a plaintiff need only establish that a defendant, "by means of any machine, instrument, contrivance, or in any other manner," does any of the following:

> Intentionally taps, or makes any unauthorized connection, whether physically, electrically, acoustically, inductively or otherwise, with any telegraph or telephone wire, line, cable, or instrument, including the wire, line, cable, or instrument of any internal telephonic communication system,

> *Or*

> Willfully and without the consent of all parties to the communication, or in any unauthorized manner, reads or attempts to read or learn the contents or meaning of any message, report, or communication while the same is in transit or passing over any wire, line or cable or is being sent from or received at any place within this state,

> *Or*

> Uses, or attempts to use, in any manner, or for any purpose, or to communicate in any way, any information so obtained,

> *Or*

> Aids, agrees with, employs, or conspires with any person or persons to unlawfully do, or permit, or cause to be done any of the acts or things mentioned above in this section.

48. The Services are a "machine, instrument, contrivance, or … other manner" used to engage in the prohibited conduct at issue here.

49. Observe.AI is a separate legal entity from Public Storage that offers "'software-as-a-service' and not merely a passive device." *Saleh v. Nike, Inc.*, 562 F. Supp. 3d 503, 520 (C.D. Cal. 2021). Accordingly, Observe.AI was a third party to any communication between Plaintiff and members of the Class, on the one hand, and Public Storage, on the other. *Id.* at 521; *see also Flowers v. Twilio, Inc.*, 2016 WL 11684603, at *1 (Cal. Super. Ct. Aug. 2, 2016) ("[T]she complaint makes clear that it is Twilio, not its clients, that recorded the communications … The allegations are not, as Twilio asserts, that Twilio simply provided a software product that third parties misused.").

50. Observe.AI is a third party wiretapper because it has the capability to use the contents of conversations it collects through the Services for its own purposes, other than simply furnishing the recording to its clients, such as Public Storage. *Javier v. Assurance IQ, LLC*, 2649 F. Supp. 3d 891, 900 (N.D. Cal. 2023); *see also Yockey v. Salesforce, Inc.*, --- F. Supp. 3d ---, 2023 WL 5519323, at *5 (N.D. Cal. Aug. 25, 2023).

51. At all relevant times, through the Services, Observe.AI violated the first prong of CIPA § 631(a) by intentionally tapping, electrically or otherwise, the lines of telephone communication between Plaintiff and Class Members, on the one hand, and Public Storage, on the other hand.

52. At all relevant times, through the Services, Observe.AI violated the second prong of CIPA § 631(a) by willfully and without the consent of all parties to the communication, or in any unauthorized manner, reading or attempting to read or learn the contents of electronic communications between Plaintiff and Class Members, on the one hand, and Public Storage, on the other hand, while the electronic communications were in transit or passing over any wire, line or cable or were being sent from or received at any place within California.

53. Observe.AI failed to inform Plaintiff and Class Members: (i) that Observe.AI, as a third party, was listening in on communications between Plaintiff and Class Members, on the one hand, and Public Storage, on the other hand; (ii) that Observe.AI, as a third party, was tapping or otherwise making an unauthorized connection with Plaintiff's and Class Members' conversations

with Public Storage using the Services; and (iii) that the content of Plaintiff's and Class Members' communications with Public Storage were being recorded, collected, intercepted, and analyzed by, Observe.AI, a third party.

54.    Accordingly, neither Plaintiff nor any Class Member consented to Observe.AI's interception of their communications with Public Storage.

55.    Observe.AI knows it is a separate and distinct third-party entity from Public Storage and customer service agents, the consumers speaking with Public Storage, and the conversations at issue.  Observe.AI knows it is eavesdropping upon and recording conversations to which it is not a party.

56.    Pursuant to Cal. Penal Code § 637.2, Plaintiff and Class Members have been injured by the violations of CIPA § 631(a), and each seeks statutory damages of $5,000 for each of Observe.AI's violations of CIPA § 631(a).

**<u>COUNT II</u>**
**Violation Of The California Invasion of Privacy Act,**
**Cal. Penal Code § 632(a)**

57.    Plaintiff repeats the allegations contained in the foregoing paragraphs as if fully set forth herein.

58.    CIPA § 632(a) prohibits an entity from "intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio."  Cal. Penal Code § 632(a).

59.    The Services are an "electronic amplifying or recording device."

60.    At all relevant times, Observe.AI intentionally recorded the confidential communications of Plaintiff and the Class Members.

61.    At all relevant times, the communications between Plaintiff and the Class Members, on the one hand, and Public Storage, on the other, were confidential.  Communications entail

discussions of storage reservations, financial information for payment processing, and other forms of information required for the purpose of identity verification.

62. When communicating with Public Storage, Plaintiff and Class Members had an objectively reasonable expectation of privacy. Plaintiff and the Class Members did not expect that Observe.AI, an unknown third party, would intentionally use an electronic amplifying or recording device to record their confidential communications.

63. Plaintiff and the Class Members did not consent to Observe.AI's intentional use of an electronic amplifying or recording device to record their confidential communications.

64. Pursuant to Cal. Penal Code § 637.2, Plaintiff and the Class Members have been injured by the violations of CIPA § 632(a), and each seeks statutory damages of $5,000 for each of Observe.AI's violations of CIPA § 632(a).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks judgment against Defendant, as follows:

(a) For an order certifying the Class, naming Plaintiff as representative of the Class, and naming Plaintiff's attorneys as Class Counsel to represent the Class;

(b) For an order declaring that Defendant's conduct violates the statute referenced herein;

(c) For an order finding in favor of Plaintiff and the Class on all counts asserted herein;

(d) For actual, compensatory, statutory, and/or punitive damages in amounts to be determined by the Court and/or jury;

(e) For prejudgment interest on all amounts awarded;

(f) For an order of restitution and all other forms of equitable monetary relief;

(g) For injunctive relief as pleaded or as the Court may deem proper; and

(h) For an order awarding Plaintiff and the Class their reasonable attorneys' fees, expenses, and costs of suit.

## JURY TRIAL DEMAND

Plaintiff demands a trial by jury on all causes of action and issues so triable.

Dated:  June 19, 2025

Respectfully submitted,

**GUCOVSCHI ROZENSHTEYN, PLLC.**

By:   _/s/ Adrian Gucovschi_

Adrian Gucovschi (State Bar No. 360988)
140 Broadway, Fl. 46
New York, NY 10005
Telephone: (212) 884-4230
Facsimile: (212) 884-4230
E-Mail: adrian@gr-firm.com

*Attorney for Plaintiff*